IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   09-cr-279-JLK

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.   FAYIN DENG,
     a/k/a "Tom,"

       Defendant.

---

**RULE 11(c)(1)(B) PLEA AGREEMENT,
COOPERATION AGREEMENT AND STIPULATION OF FACTS**

---

The United States of America, by District of Colorado United States Attorney David M. Gaouette, through Assistant United States Attorney Stephanie Podolak, and the defendant FAYIN DENG, personally and by his attorney, Abraham V. Hutt, Esq., submit the following Plea Agreement, Cooperation Agreement, and Stipulation of Facts pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure and District Court of Colorado Local Rule 11.1.

### I.  **PLEA AGREEMENT**

1.   The defendant agrees to plead guilty to Count One of the above-captioned indictment which charges that on or about and between June 30, 2006, and May 20, 2009, both dates being approximate and inclusive, within the State and District of Colorado and elsewhere, the defendants FAYIN DENG, a/k/a "Tom,"

1

**COURT EXHIBIT
1**

KELLY CHUONG, and LIAN H. XIAN, and others both known and unknown to the grand jury, did knowingly and intentionally conspire to manufacture, distribute, and possess with the intent to distribute, 1000 or more marijuana plants, all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(vii) and 846.

2.    The defendant also agrees to admit the forfeiture allegation contained in Count Seven of the above-captioned indictment and to forfeit any and all of his interest in the following assets, all of which are proceeds of and involved in the the illegal activity to which he is pleading guilty:

    a.    $78,970 in United States Currency;

    b.    $42,997.91 seized from First Bank Account #5711239244; and

    c.    $118,900 in United States Currency.

3.    In consideration of this agreement, the defendant agrees that he shall continue to assist the government in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of all rights, title, and interest, regardless of their nature or form, in all assets, including real and personal property, cash and other monetary instruments, wherever located, which the defendant or others to his knowledge have accumulated as a result of illegal activities. Such assistance will involve an agreement on defendant's part to the entry of an order enjoining the transfer or encumbrance of assets which may be subject to forfeiture.

2

4.   Additionally, the defendant agrees to identify to the best of his ability as being subject to forfeiture all such assets, and to assist  in the transfer of such property to the United States by delivery to the government upon request, all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds and any and all other documents necessary to deliver good and marketable title to said property.

5.   The defendant further agrees that, should any family member, associate, or acquaintance attempt to claim any such property, the defendant will provide necessary information to the government regarding any such claim to the best of his ability.

6.   The defendant also agrees to waive any applicable time limits for the initiation of administrative forfeiture and/or further notification of any judicial or administrative forfeiture proceedings brought against said assets, and the defendant agrees to waive any appeal from the forfeiture.

The Government agrees to request that the defendant receive a three-level decrease for timely acceptance of responsibility pursuant to United States Sentencing Guideline Section 3E1.1(b).

3

## II.   **ELEMENTS OF OFFENSE**

7.   The elements of this offense that the government must prove at trial, beyond a reasonable doubt, are:

        a.     On or about the dates charges and within the State and District of Colorado,

        b.     the defendant agreed with at least one other person to violate the law by manufacturing, distributing, and possessing with intent to distribute a quantity of a controlled substance.

        c.     The defendant knew the essential objective of the conspiracy.

        d.     The defendant knowingly and voluntarily participated.

        e.     There was interdependence among the members of the conspiracy in that the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

## III.   **COOPERATION AGREEMENT**

8.   The defendant agrees to provide truthful, complete and accurate information, and agrees to cooperate fully with the Government. Deliberate falsehoods or misinformation provided during his cooperation with the Government would be grounds for rescission of this Plea Agreement as well as possible further prosecution for perjury or false statements. This cooperation will include, but is not limited to, the following:

        a.     The defendant agrees to be fully debriefed, and to attend all meetings at which his presence is requested, concerning his participation in and knowledge of all criminal activities.

4

b.  The defendant agrees to furnish to the Government all documents and other material that may be relevant to the investigation and that are in the defendant's possession or control.

c.  The defendant agrees to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the Government.

d.  The defendant agrees that he will at all times give complete, truthful and accurate information and testimony and that he will fully and truthfully disclose all information with respect to the activities of himself and others concerning all matters about which the Government inquires.

e.  The defendant consents to postponements of his sentencing, as requested by the Government and as approved by the Court.

9.  In further consideration of this plea, if the United States Attorney's Office for the District of Colorado determines, in its sole discretion, that the defendant has cooperated fully, provided substantial assistance to law enforcement authorities and otherwise complied with the terms of this agreement, the Government, at the time of sentencing, will file a motion with the sentencing Court pursuant to Title 18, United States Code, Section 3553(e) and Section 5K1.1 of the Sentencing Guidelines.  This motion will permit the Court, in its discretion, to impose a sentence below the applicable Sentencing Guidelines range.

5

10. It is understood that the Government's determination of whether the defendant has cooperated fully and provided substantial assistance, and the Government's assessment of the value, truthfulness, completeness and accuracy of the cooperation, are within the Government's sole discretion. The parties further understand and agree that the decision of whether to file such a 5K1.1 motion is entirely within the discretion of the Government. Moreover, the defendant shall not be entitled to withdraw his plea if the Government determines that he has not fully cooperated and elects not to file the above-described motion.

11. The defendant's full cooperation is not yet complete. However, in consideration of cooperation provided to date and and additional cooperation in the future, and pursuant to Title 18, United States Code, Section 3553(e) and Section 5K1.1 of the Sentencing Guidelines, the government agrees to recommend that the Court impose a sentence of no less than 30 and no more than 36 months imprisonment. The parties will be free, at the time of sentencing, to argue as to what sentence within that range the court should impose.

12. The parties recognize that any departure requested by the Government will be a recommendation to the Court and that the ultimate question of whether a departure is to be granted and the amount of that departure will rest solely within the discretion of the sentencing Court.

6

## IV.  **STATUTORY PENALTIES**

13.   The statutory penalties for a violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(vii) and 846, as charged in Count One of the Indictment, are as follows: not less than ten years imprisonment and not more than life imprisonment; not more than a $4,000,000.00 fine, or both; not less than five years supervised release; and a $100 special assessment fee.  There is no restitution. The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.  A violation of the conditions of probation or supervised release may result in a separate prison sentence.

## V.  **STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING**

14.   The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction.

15.   Pertinent facts are set out below in order to provide a factual basis of the plea and to provide facts which the parties believe are relevant.  To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea.

7

16. The statement of facts herein does not precludeeither party from presenting and arguing, for sentencingpurposes, additional facts or factors not included herein whichare relevant to sentencing in general.

17. The government would prove the following at trial. In approximately September 2007, law enforcement received information from a confidential source (CS-1) about a large-scale, Asian, indoor marijuana grow organization that existed in Thornton, Colorado, and in the surrounding areas. The investigation, which lasted approximately one year, revealed that there were many single-family residential homes being used by the organization to cultivate marijuana.

18. CS-1 specifically told law enforcement officers that the defendant FAYIN "TOM" DENG and his wife, KELLY CHUONG, were operating several marijuana grow houses in the metro area. CS-1 also advised that FAYIN DENG sold marijuana and that KELLY CHUONG handled the money gained from the distribution of marijuana. CS-1 advised that FAYIN DENG and KELLY CHUONG were involved with other family members in the marijuana growing business. CS-1 told law enforcement there were six Asian brothers growing and selling marihuana in the Thornton area. CS-1 identified brother #1 as WEIYIN DENG, brother #2 as DAN TANG, brother #3 as YUE DE DENG, brother #4 as MINGYIN DENG, brother #5 as LIANG DENG, "Toby" and brother number #6 as FAYIN DENG or "Tom".

19.   CS-1 advised that several brothers owned local Chinese restaurants and used the restaurants to further their marijuana business.

20.   From the outset of the investigation, CS-1 identified the defendants FAYIN "Tom" DENG, a/k/a "Brother #6" and KELLY CHUONG as major players in the marijuana organization. Through dozens of surveillance operations, conversations with CS-1, interviews with FAYIN "Tom" DENG and KELLY CHUONG, as well as the review of property records from Adams County, law enforcement was able to identify eight properties with ties to to FAYIN "Tom" DENG and or KELLY CHUONG.  Six of the properties were later confirmed to be sophisticated indoor marihuana grows.

21.   The six properties connected to FAYIN DENG and KELLY CHOUNG which were used for indoor marihuana grows were as follows:

-   14379 Fillmore Court, Thornton, Colorado, listed owner is FAYIN "Tom" DENG;

-   13411 Monaco Street, Thornton, Colorado, listed owner is KELLY CHUONG;

-   2584 E. 142nd Avenue, Thornton, Colorado, listed owner is KIKI CHUONG;

-   6387 E. 135th Avenue, Thornton, Colorado, listed owner is KELLY CHUONG;

-   166 S. Trailblazer Road, Ft. Lupton, Colorado, listed owner is ERIC SEN;

-   927 Zodo Street, Erie, Colorado, listed owner is KELLY CHUONG and L. HUANG;

9

22.   On February 16, 2008, law enforcement officers were monitoring telephone conversations intercepted pursuant to a Title III wiretap order approved by United States District Court Judge Lewis T. Babcock.   The Title III wiretap focused on the above-described Asian marijuana trafficking organization.   During the course of the intercepts, law enforcement officers determined that members of the organization were planing to dismantle the marijuana grow operations because they were afraid that the police were about to take action against them.   As a result, a decision was made to execute search warrants and consent searches before the destruction of evidence occurred.

23.   From the evidence seized, the following items were seized from houses directly connected to FAYIN "Tom" DENG and KELLY CHUONG:

- 14379 Fillmore Street, Thornton, Colorado, 1,734 marijuana plants, 63 ballasts and 63 sodium lights

- 13411 Monaco Street, Thornton, Colorado, 1,631 marijuana plants, 67 ballasts and 63 sodium lights

- 2584 E. 142nd Avenue, Thornton, Colorado, 1,469 marijuana plants, 58 ballasts and 59 sodium lights

- 6387 E. 135th Avenue, Thornton, Colorado, 1,551 marijuana plants, 68 ballasts and 66 sodium lights

- 166 S. Trailblazer Road, Ft. Lupton, Colorado, no marijuana plants, no ballasts and no sodium lights

10

- 927 Zodo Street, Erie, Colorado, no marijuana plants, 65 ballasts and 64 sodium lights

24.   During mirandized interviews with FAYIN DENG on February 16th, 2008, and April 4th, 2008, FAYIN DENG admitted that he and his wife, KELLY CHUONG were in the business of buying houses and converting them into sophisticated indoor marijuana grows. FAYIN DENG admitted that he had active marijuana grows in 14379 Fillmore Street, 13411 Monaco Street, 2584 E. 142nd Avenue and 6387 E. 135th Avenue.  FAYIN DENG told law enforcement officers that he learned how to grow marijuana from his older brother, MINGYIN DENG and started buying houses with his brothers in order to convert them into indoor marihuana grows to make money.  FAYIN "Tom" DENG also admitted that he sold between 10 to 15 pounds of marijuana per week for an average price of $2,500.00 per pound.

25.   The interview took place at the home owned by FAYIN DENG and KELLY CHUONG located at 12155 Adams Street Thornton, Colorado.  KELLY CHUONG stated there was some cash located in a safe in one of the upstairs bedrooms and in a safety deposit box.  The box was opened and $78,970.00 in U.S. Currency was recovered.  KELLY CHUONG further advised that FAYIN DENG tended to the marijuana grows while she (CHUONG) helped the others in the organization to obtain residences by translating English to Chinese for the group.

11

26.   While speaking to KELLY CHUONG and FAYIN "Tom" DENG on February 16, 2008, Dan TANG, brother #2, arrived at 12155 Adams Street Thornton, Colorado.   TANG's vehicle was searched and $320,120.00 in U.S. Currency was recovered.   During the course of additional interviews, both KELLY CHUONG and DAN TANG stated that the money seized from the rear bed of TANG's pick-up truck belonged to KELLY CHUONG and FAYIN DENG and that the money was profits gained from the sale of marijuana.

27.   On February 19, 2008, KELLY CHUONG turned over $118,900 in U.S. Currency that she admitted were profits from marijuana proceeds.   This money was concealed inside a safety deposit box located at 1st Bank at 136th and Colorado Thornton, Colorado.

28.   During interviews, both KELLY CHUONG and FAYIN DENG denied using 12251 CHERRYWOOD STREET in Broomfield, Colorado to grow marihuana.

29.   On April 29, 2009 at approximately 9:00 a.m., law enforcement received information concerning an anonymous letter addressed to the Broomfield Police Department regarding a possible indoor marihuana grow at 12251 CHERRYWOOD STREET in Broomfield, Colorado, listed to FAYIN DENG.   Water bills for the property indicated a high level of water use consistent with an indoor marihuana grow operation.

12

30.   On April 30, 2009, at approximately 9:00 a.m.,
Detective Dan Joyce drove to 12251 CHERRYWOOD STREET and observed
a discoloration on the siding, just above the attached garage
door. In addition, Detective Joyce could smell the odor of
growing/fresh marihuana.

31.   On May 1, 2009, at approximately 9:00 a.m., DEA
Task Force Detective James Caffrey observed a gold colored Honda
Odyssey van, bearing Colorado plate 529RFF, depart the 12251
CHERRYWOOD STREET address and drive directly to the Pearl Wok
restaurant located at 5027 W. 120th Ave. Broomfield, Colorado.
The Pearl Wok is owned by the defendants FAYIN DENG and KELLY
CHOUNG.

32.   Law enforcement found that the registration plates
529RFF lists to a 2001 gold Honda Odyssey registered to the
defendant LIAN H. XIAN (07/10/79) at 2597 E. 131st Pl. in
Thornton, Colorado.  Law enforcement is familiar with this
address as the home of brother #5, LIANG DENG.  LIAN XIAN is an
employee at Pearl Wok.

33.   On May 20, 2009, law enforcement officers arrived
in the area of 12251 CHERRYWOOD STREET Broomfield, Colorado,
knocked on the front door, and LIAN XIAN opened the front door.
Law enforcement immediately felt hot humid air coming from inside
the house.  Law enforcement also observed a large aluminum color
venting pipe coming from inside the kitchen to the ceiling of the

13

first floor.  All of these observations are consistent indicia of a marijuana grow.

34.  LIAN XIAN gave consent to search the residence and 85 marijuana plants, 5 high intensity grow lights, 5 ballast, 1 portable grow room and 2 large charcoal filters were seized.

35.  On May 20, 2009, at approximately 10:50 p.m, LIAN XIAN arrived at the DEA Office in Englewood, Colorado.  Ronita Hajn was present to assist with interpretation.  LIAN XIAN was advised of his Miranda rights, agreed to waive those rights and make statements.  During the interview, LIAN XIAN stated that the marijuana plants at 12251 CHERRYWOOD STREET belonged to him and that he purchased 10 marijuana plants from FAYIN "Tom" DENG for $200.00.  LIAN XIAN also stated that he learned how to establish a marijuana grow from FAYIN DENG.  According to LIAN XIAN, he assisted FAYIN DENG with one of DENG's marijuana houses located near 140th Street.

36.  All the suspected marijuana plants were submitted to the lab for testing and were, in fact, determined to be marijuana.

37.  All the above offenses took place within the State and District of Colorado.

## VII.  **SENTENCING COMPUTATION**

38.  The parties stipulate that sentencing in this case is to be determined by the Court based upon the sentencing

factors in Title 18 U.S.C. § 3553 and calculations following the provisions of the U.S. Sentencing Guidelines, issued pursuant to 28 U.S.C. § 994(a), as applied by the Court in an advisory capacity.  The parties further stipulate and agree that a sentence within the range suggested by proper and complete application of the U.S. Sentencing Guidelines would be a reasonable sentence.

39.  As part of this Plea Agreement, the parties specifically agree that they will not argue for any departures, either upward or downward, not specifically made a part of this agreement.

40.  The parties understand that the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position of the parties.  The Court is free, pursuant to §§6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the pre-sentence investigation, and any other relevant information.  (§6B1.4 Comm.; §1B1.4).

41.  To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute.  (§6B1.4(b)).

A.  Pursuant to Section 2D1.1, the base offense level is calculated as follows.  The relevant offense conduct for this defendant involved 6,470 marijuana plants.  Pursuant to

15

application note (E), each marijuana plant equals 100 grams of marijuana for a total of 647 kilograms of marijuana.  The base offense level is 28 (at least 400 but less than 700 kilograms of marijuana).

B.   The government believes that the defendant should receive a 4 level enhancement for Aggravating Role in the offense under Section 3B1.1(a) in that the in that the defendant was an organizer, leader, manager or supervisor of a criminal activity that involved five or more people or was otherwise extensive.  The resulting base offense level is 32. Mr. Deng disputes this calculation.

C.   The defendant would receive a three level downward adjustment for acceptance of responsibility.  The resulting offense level is 29. The defense believes the resulting offense level should be 25.

D.   The parties understand that the stipulation regarding criminal history of the defendant is tentative, and that the defendant is in a better position to know the relevant facts than is the Government. The criminal history category is more completely and accurately determined by the Probation Department, and additional facts regarding the criminal history can greatly affect the final guideline range.  Nevertheless, the parties believe that the defendant is in Criminal History Category I.

E.   The career offender/career livelihood adjustments do not apply.

F.   The defendant believes that he qualifies for the an additional two level reduction because of the application of the safety valve provision of Title 18, U.S.C. Section 3553(e) and Section 5C1.2 of the Sentencing Guidelines, (Applicability of Statutory Minimum Sentences). The government believes that the defendant does not qualify for this reduction because the defendant was an organizer, supervisor or manager of the offense.

16

If the defendant is correct, the resulting offense level would be 23.

G.    The government believes that the resulting guideline range resulting from an offense level of 29 and a tentative criminal history category of I is 87-108. However, the mandatory minimum 10 year (120 month) penalty set forth for the offense in Title 21, United States Code, Section 841(b)(1)(A)(vii)) is applicable. Mr. Deng believes that the resulting guideline range resulting from an offense level of level 23, criminal history category I, is 46-57 months. Assuming that the defendant's cooperation is truthful and complete and that the defendant meets all his obligations under the cooperation agreement, the Government states its intention to recommend that the Court make a departure from the low end of the applicable guideline range to a sentence of not less than 30 months and not more than 36 months. Mr. Deng has also agreed to argue for a sentence within the the range of 30 to 36 months.

H.    The fine range under the Sentencing Guidelines is $15,000 to $150,000. There is a statutory fine range of $4,000,000.00

## VII.   REASONS WHY THE PLEA AGREEMENT IS APPROPRIATE

45.   The plea encompasses all readily provable relevant offense conduct and adequately reflects the nature of the criminal activity engaged in by the defendant. Moreover, the sentence recommendation is designed to make his level of punishment commensurate with and proportionate to the many other participants in this conspiracy who were charged and sentenced in separate cases and in other courts.

46.   This document states the parties' entire agreement.  There are no other promises, agreements (or "side

agreements"), terms, conditions, understandings or assurances, express or implied.  In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Dated:   Denver, Colorado
4|29              2010

Respectfully submitted,

DAVID M. GAOUETTE
United States Attorney
District of Colorado

Agreed and consented to:

By: _____
Stephanie Podolak
Assistant U.S. Attorney

_____
FAYIN DENG
Defendant

Approved by _____

_____
Abraham Hutt, Esq.
Counsel to Defendant