**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 09-cr-00279-JLK-01

UNITED STATES OF AMERICA,

        Plaintiff,

v.

FAYIN DENG,
a/k/a "Tom"

        Defendant.

## MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

        The Defendant, Fayin Deng, through undersigned counsel and pursuant to 18 U.S.C. §3583(e)(1), hereby moves for early termination of his supervised release. As grounds, the following are stated:

        1.     On April 29, 2010, Mr. Deng pleaded guilty to violating 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(vii) charging Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute 1000 or More Marijuana Plants. He also admitted to a forfeiture in violation of 21 U.S.C. § 853. On July 9, 2010, Mr. Deng was sentenced to eighteen (18) months imprisonment to be followed by six (6) years of supervised release.

        2.     Mr. Deng was arrested on May 22, 2009. On June, 1, 2009, he was released on bond and remained under pretrial supervision for approximately fourteen (14) months until his voluntary surrender to the Federal Prison Camp in Florence, Colorado on August 10, 2010. He fully complied with all conditions of pretrial release. While confined, Mr. Deng worked as a cook and during lockdowns at the Federal Correctional Institution and the United States Penitentiary he delivered food and services to inmates at both facilities. His starting hourly income at the camp was twelve cents ($.12) which increased to twenty-eight cents ($.28) prior to release, both well below minimum wage.

Mr. Deng has paid the one hundred dollar special assessment and has no other court-ordered financial obligations. During his term of imprisonment, Mr. Deng was a model inmate. Since Mr. Deng's release from Bureau of Prisons custody, he has resided with his wife, their four (4) children, his mother, and his father. His father, Zheng Deng, is eighty-one (81) years old and is dying from lung cancer. He receives hospice care and desperately wants to live out his final days in China, his birth country. (Attached as Exhibits A and B, respectively, are letters from Mr. Deng's father and his father's physician, Kelly Jeong, M.D.). Mr. Deng is extremely close to his father who has requested that Mr. Deng accompany him to his final resting place. It is noted that Mr. Deng's father neither reads nor writes in the English language. Accordingly, his comments were translated by a family member.

      3.      Mr. Deng graduated from Northglenn High School and attended Metropolitan State College of Denver for approximately three (3) years. He and his wife own the Pearl Wok restaurant in Broomfield, Colorado. His net income is approximately one thousand five hundred eighty-five dollars ($1585.00) every two weeks. He works twelve (12) to thirteen (13) hours a day and on occasion takes a Sunday off. Prior to discharge from his term of imprisonment, Mr. Deng served four (4) months at Independence House Residential Reentry Center during which time he worked as a sushi chef at Zen Restaurant in Westminster, Colorado. He continues to live within his financial means with no financial problems noted.

      4.      Mr. Deng's supervised release commenced on November 18, 2011. He has fully complied with all terms and conditions of his supervision. He was initially required to submit random urine samples for drug analysis. All samples were negative for drug use. Since that time, he has been supervised by three (3) different probation officers. He last spoke with his assigned probation officer in May of 2014 when he was informed by telephone that he was classified as a low intensity supervision case. Mr. Deng is not required to report for office visits nor has the Probation Office conducted home or employment visits for the past year. He is simply required to submit a two-page monthly report form. Attached as Exhibit C is a blank copy of the form. This is the only information the Probation Office relies upon to supervise Mr. Deng. The website for the United States Probation Office, District of Colorado, states as follows:

2

> "A primary responsibility of the Supervision Unit of the U.S. Probation Office is the protection of the public through proactive risk control supervision techniques designed to detect and deter any further criminal behavior of the offender. The probation office uses a two-pronged approach in exercising their statutory responsibility. The officers utilize a combination of controlling and correctional strategies to deal with the risks related to a specific case and to bring about a positive change in the offender's behavior, maximizing the offender's potential for success during the supervision process and beyond."

The risk control techniques in Mr. Deng's case have been reduced to submission of monthly report forms. This indicates a belief that Mr. Deng does not pose a threat to the public, that he has made a positive change in his behavior, and that he is reflective of his success during supervision (http://www.cop.uscourts.gov/aboutus/ourservices.aspx#supervision).

5. A recidivism study by the Administrative Office of the United States Courts examined offenders whose supervision terms expired or were terminated early in fiscal year 2005. The study found that during the thirty six (36) month follow-up period, "offenders granted early termination do not pose a greater safety risk to the community" than offenders who successfully served the entire supervised release term imposed by the sentencing court. Not only were early-term offenders charged with a new criminal offense at a lower rate than full-term offenders, they were charged with proportionally fewer felonies (http://www.uscourts.gov/viewer.aspx?doc=/uscourts/FederalCourts/PPS/Fedprob/2013-09/no-compromise.html).

6. Probation officers refer to The Federal Supervision Monograph 109 ("Monograph") for direction in considering early termination from probation or supervised release. The Monograph at Section 380.10 states, in pertinent part:

> (a) Under 18 U.S.C. §§ 3564(c) and 3583(e)(1), the court may terminate terms of probation in misdemeanor cases at any time and terms of supervised release or probation in felony cases after the expiration of one

3

year of supervision if satisfied that such action is warranted by the conduct of an offender and is in the interest of justice.

(b) Officers should consider the suitability of early termination for offenders as soon as they are statutorily eligible. The general criteria for assessing whether a statutorily eligible offender should be recommended to the court as an appropriate candidate for early termination are as follows:

(1) Stable community reintegration (e.g., residence, family, employment); **Mr. Deng has reestablished himself in the community. His reintegration has been successful. He has the support of his family. He is also assisting his elderly parents by providing for their needs. Mr. Deng is gainfully employed and is not living above his means.**

(2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision; **Mr. Deng has fully complied with all conditions of supervision, both while under pretrial supervision and while on supervised release. Furthermore, during his term of confinement, Mr. Deng fully complied with all Bureau of Prison requirements.**

(3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses; **Mr. Deng received a role enhancement. This, however, should not limit the Court in considering his positive adjustment to supervision. As indicated by his supervision classification, he does not pose a threat to the community. Also, see Federal Post-Conviction Risk Assessment, below.**

(4) No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence); **Mr. Deng has no history of violence.**

4

(5) No recent arrests or convictions (including unresolved pending charges) or ongoing, uninterrupted patterns of criminal conduct;  **Mr. Deng has not been arrested or charged with a new criminal offense during the term of supervision.**

(6) No recent evidence of alcohol or drug abuse;  **All random urinalysis samples submitted for testing were negative for substance abuse. There is no indication of alcohol abuse.**

(7) No recent psychiatric episodes;  **There is no indication of psychiatric episodes.**

(8) No identifiable risk to the safety of any identifiable victim;  **No such risk exists.**

(9) No identifiable risk to public safety based on the Risk Prediction Index (RPI).  **Consistent with Mr. Deng's supervision classification, he does not pose a threat to public safety.**

Section 380.10(d) of the Monograph provides as follows: "during the first eighteen months of supervision, the appropriateness of early termination should be based on the offender's overall progress in meeting supervision objectives and should include an evaluation of all the circumstances in the individual case. Offenders with identified risks to community safety should not be recommended for early termination. However, the failure to meet other criteria listed should not automatically exclude an offender from further consideration". Guide to Judiciary Policy, Vol. 8E, Ch. 3

7. An Overview of the Federal Post Conviction Risk Assessment published in September, 2011 by the Administrative Office of The United States Court, states in Part D:

"One of the recommendations of the Strategic Assessment report was that the federal probation system investigate how to make '[b]etter use of data-

5

driven tools.' An important shortcoming of the RPI, according to the study, is that its factors are static and 'do not enable an officer to regularly assess changes in the risk posed by the offender.' Second, the RPI is 'not tied to case management, and so [it] does not suggest actions to be taken by officers in managing risk.' While the purpose of the RPI is to aid officers in developing a case supervision plan, it is unclear how this can be accomplished. The newer generation of risk and needs assessment instruments offers several advantages over older tools such as the RPI, including the ability to detect change in risk over time, identification of future criminal drivers, and a direct connection between the actuarial assessment tool and a supervision case plan."

8. It is also noted that Ming Yin Deng, the Defendant's brother, was the most culpable of those involved in the underlying drug conspiracy. He and others were responsible for moving marijuana grow operations from Sacramento, California, to Colorado. It appeared that he was in charge of operations. Ming Yin Deng initially fled to China to avoid prosecution. He was ultimately allowed to plead guilty to a violation of 31 U.S.C. § 5332, smuggling over $10,000 in cash in an attempt to evade reporting requirements. He was sentenced to time served and placed on supervised release for one year (10-cr-00530-MSK-01).

9. Undersigned counsel recently spoke with United States Probation Officer Carlos Morales who is currently supervising Mr. Deng. Mr. Morales initially stated that Mr. Deng has been under his supervision since May of 2014, is on low intensity supervision, and that Mr. Deng "works his butt off". Further, that Mr. Deng has done well under supervision and that Mr. Morales had no objection to early termination from supervised release. Shortly after that telephone conversation, Mr. Morales called counsel to apologize and to state that he can't support the motion because Mr. Deng received a role enhancement. Again, counsel cites to the Overview of the Federal Post-Conviction Risk Assessment, above, and notes that Mr. Morales referred only to the RPI in assessing Mr. Deng's risk factors.

10. On March 4, 2015, undersigned counsel spoke with Assistant United States Attorney Stephanie Podolak. Ms. Podolak stated that although she is bound by the position taken by Mr. Morales, she would otherwise not oppose the instant motion.

11. Mr. Deng has been supervised by The United States Probation Office for approximately fifty three (53) months. He does not pose a threat to the community and further supervision serves no constructive purpose. Mr. Deng is an excellent husband, father, and son who very much would like to accompany his dying father to China to live out his final days. The interest of justice warrant Mr. Deng's termination from supervision at this time.

Dated this 11th day of March, 2015.

Respectfully submitted,

s/ Michael S. Axt
Michael S. Axt
Law Offices of Michael S. Axt
1733 High Street
Denver, CO  80218
Telephone:  (303) 333-7110
FAX:  (303) 333-9493
Email:  Michael@axtlaw.com
Attorney for Defendant Fayin Deng

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March, 2015, I electronically filed the foregoing **MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASED** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

                                            s/ Michael S. Axt
                                            Michael S. Axt
                                            Law Offices of Michael S. Axt
                                            1733 High Street
                                            Denver, CO  80218
                                            Telephone:  (303) 333-7110
                                            FAX:  (303) 333-9493
                                            Email:  michael@axtlaw.com

      I also hereby certify that I have forwarded the document to the following non-CM/ECF participant in the manner indicated after the non-participant's name:

Fayin Deng *(via U.S. mail)*